IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ricky Brannon, 179051, | ) CIVIL ACTION NO. 9:15-2434-CMC-BM |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Bill Blanton, Sheriff of Cherokee County; | ) |
| Tim Clark, Detective of Cherokee County | ) |
| Sheriff's Dept; and John and Jane Doe, | ) |
| Defendants. | ) |

This action has been brought by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate at with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on January 29, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 1, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on March 16, 2016.



Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified Complaint[2] that on or about May 11, 2004 there was "an alleged burglary and arson [at] the Cherokee County Courthouse". Plaintiff alleges that he was thereafter picked up at his job for questioning by two agents with the South Carolina Law Enforcement Division (SLED). Plaintiff alleges that he had several felony charges pending against him at that time, for which he had a pending court appearance, and for which he was out on bond. Plaintiff alleges that he learned during his questioning that the law enforcement agents were "questioning and screening every person who had felony charges with a court date". Plaintiff alleges that after he was questioned, the SLED agents told him he was free to go, and that he was never questioned again by anyone in law enforcement concerning the courthouse fire.

Plaintiff alleges that on October 12, 2004 he appeared in Court on one of his pending felony charges and was sentenced to two years in prison. Plaintiff alleges that while he was being processed through the prison's intake center, he "discovered through the news media" that the Cherokee County Sheriff's Department was charging him with the burglary and arson of the courthouse. Plaintiff alleges that this action was being taken by the Defendants Bill Blanton (the Sheriff) and Tim Clark (a detective). Plaintiff alleges that he did not know on what basis the

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



Defendants were bringing these "false" charges against him, but that over the next several days his face was "blasted all over the state's news and even national news media as the person who set the Cherokee County Historical Courthouse on fire". Plaintiff further alleges that during interviews, the Defendants disclosed Plaintiff's past criminal history and "vowed to prosecute the Plaintiff to the fullest [extent] of the law".

        Plaintiff alleges that on or about August 1, 2005, he completed his sentence at the Broad River Correctional Institution, but that due to the publicity about the burglary and arson charges being brought against him by the Defendants, instead of being released he was instead turned over to the custody of the Cherokee County Sheriff's Department. Plaintiff alleges that he was handcuffed and escorted by two officers to the Cherokee County Detention Center, where he was jailed. Plaintiff alleges that he continuously "protested his imprisonment and the false charges against him", and that after twelve (12) days of being imprisoned at the Detention Center, the Defendant Clark "finally served arrest warrants on the Plaintiff" charging him with burglary, grand larceny, and arson.[3] Plaintiff alleges that he was thereafter denied bond and remained incarcerated for eight (8) months, until on or about April 12, 2006.

        Plaintiff alleges that on April 12, 2006, he went to trial and was convicted on unrelated previous burglary and grand larceny charges (for which he had earlier been given a bond). Plaintiff alleges that he was sentenced to life for those unrelated burglary charges, but that the Courthouse related charges remained pending. Plaintiff further alleges that even though he timely requested appointment of counsel to represent him on the courthouse burglary and arson charges,

---

[3]Plaintiff states in ¶ 12 of his Complaint that he has attached copies of these warrants as exhibits to his Complaint. However, there were no exhibits submitted with his Complaint.



he did not "meet or receive an actual visit from the attorney (Scott Robinson) until about 2011, some 7 years after he was so charged".

Plaintiff alleges that as a result of his attorney's visit, he finally received a copy of the discovery file relating to the courthouse burglary and arson charges, and learned that there was virtually no evidence directly linking him to the courthouse burglary and arson, but "instead pointed more towards other suspects". Plaintiff alleges that or about June 12, 2013, he was informed by his state appointed attorney that the burglary, arson and grand larceny charges that had been brought against him by the Defendants relating to the Cherokee County Courthouse had been dismissed by the South Carolina Attorney General's Office.

Plaintiff alleges that the Defendants Clark and Blanton intentionly brought false charges against him for which there was no evidence as an "unlawful means to keep him illegally detained", and in order to keep him from getting out on the bond he had been given on the two unrelated burglary charges (for which the Defendant Clark was a witness for the State). Plaintiff also alleges that his reputation continues to suffer due to these false charges, even though they have been dismissed, because he is "now forever known in his town and county of Cherokee as the person who set the courthouse on fire".

Plaintiff seeks monetary damages for the more than eight months that he "unlawfully" detained/falsely imprisoned in the County Detention Center due to these false charges and for the adverse publicity he received. Plaintiff also seeks damages for slander and defamation due to the Defendants' conduct. See generally, Verified Complaint.

- 4 -



In support of summary judgment in the case, the Defendant Tim Clark has submitted an affidavit wherein he attests that he is a Captain with the Cherokee County Sheriff's Department, and that in this capacity he is very familiar with the Plaintiff, whose criminal history dates back to 1985 with convictions for breaking and entering and grand larceny, and also includes multiple convictions for first degree burglary, arson, grand larceny, resisting arrest, and breaking into an automobile. Clark attests that he assisted in the investigation into the fire at the Cherokee County Courthouse which occurred in the early morning hours of May 11, 2004, and which was ultimately ruled to have been a result of arson. Clark attests that this investigation was conducted by officers of the Cherokee County Sheriff's Office, SLED, and the Federal Bureau of Alcohol, Tobacco and Firearms (ATF).

Clark attests that he does not recall ever personally interviewing the Plaintiff about the courthouse fire or the items that were stolen therefrom, nor does he recall Sheriff Blanton taking any active role in the investigation. However, Plaintiff was interviewed by SLED Special Agent Mansey Cuttino and ATF Agent Jeff Gaines, and Clark attests that he discussed the details of these interviews with these agents. However, he does not recall having made any comments to the media about Plaintiff or the investigation.

Clark attests that as part of the investigation, individuals who had cases pending on the general sessions docket for the term scheduled to begin on May 11, 2004 were interviewed, which included the Plaintiff since he was scheduled to go to trial that day on charges of first degree burglary as well as two counts of grand larceny and possession of burglary tools, for which he faced a mandatory life sentence if convicted. Clark attests that although the investigation initially focused



on other possible suspects, the attention turned to the Plaintiff in October 2004 when Evette Lattimore, Linda K. Hopper, and Tarsha Littlejohn came forward and provided written statements that indicated Plaintiff was in possession of a laptop computer belonging to the Cherokee County Clerk of Court's Office that had been taken from the courthouse. Copies of those written statements are attached to Clark's affidavit as Exhibit A. Clark attests that based on the investigation and the additional information provided by these individuals, he sought warrants against the Plaintiff for second degree arson, second degree burglary, and grand larceny. Clark attests that those warrants were issued by County Magistrate Judge Franklin Crocker, copies of which are attached to his affidavit as Exhibit B. Clark attests that all of these warrants were personally served on the Plaintiff on August 12, 2005.

Clark attests that because of the nature of the charges against the Plaintiff, the South Carolina Attorney General's Office took over the prosecution of these cases from the Seventh Circuit Solicitor's Office, and that he [Clark] had no further involvement in the continuation or prosecution of these charges against the Plaintiff. Clark attests that the charges were presented to the Cherokee County Grand Jury by Curtis Pauling of the South Carolina Attorney General's Office on January 9, 2006, and that Plaintiff was indicted. Copies of Plaintiff's indictments on these charges are attached as Exhibit C to Clark's affidavit. Clark attests that neither he nor Sheriff Blanton were present, nor did either of them testify before the Grand Jury that issued these indictments. Clark has also attached as Exhibit D to his affidavit a copy of the Index of the Investigative File from the Cherokee County Sheriff's Office relating to the arson investigation, which includes the General Sessions Docket for the May 11, 2004 term of court.



Clark attests that he obtained the arrest warrants against the Plaintiff because the evidence uncovered during the course of the investigation was sufficient to seek those warrants, which were then issued by Judge Crocker. Clark attests that he has no personal animosity or bias towards the Plaintiff or anyone else he investigates, that he has never provided anyone with any false or misleading information pertaining to the Plaintiff, nor did he misrepresent or omit any material facts to Judge Crocker or the prosecuting authorities. See generally, Clark Affidavit, with attached Exhibits.

In opposition to the Defendants' motion, Plaintiff has submitted an affidavit in which he attests to the correctness of various exhibits he has submitted, which he states were part of the discovery provided to him by his state appointed attorney, as well as from a civil case he filed against John Steel Bonding. See Plaintiff's Affidavit. Plaintiff's exhibits (attached to his affidavit) include a copy of the warrants issued by Judge Crocker (with the accompanying affidavits signed by the Defendant Clark); a letter to the Plaintiff from his court appointed attorney dated December 23, 2008; a copy of the indictments issued against him by the Cherokee County Grand Jury (listing Detective Tim Clark as a witness in the case); copies of witness statements from Isaac Lattimore, Mike Dixon and Jessie Jenkins (all of which were apparently taken by the Defendant Clark); copies of some chain of custody forms; a copy of a bond order from August 4, 2004 relating to some other burglary and grand larceny charges that were pending against the Plaintiff at that time; a copy of an investigation report relating to the Cherokee County Courthouse fire filed by Detective Jimmy Henson, and which indicates Sheriff Blanton was on the scene when he arrived; a copy of a search affidavit for an individual named Karl Gene Benton indicating Benton was a possible suspect in the courthouse crime; a copy of a Notice of Life Sentence against the Plaintiff dated July 30, 2004



relating to Plaintiff's pending 2004 charges; and a copy of the courthouse docket from May 11, 2004 which shows Plaintiff's case to have been one of the cases scheduled for that day. See generally, Plaintiff's Exhibits.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.



**I.**

First, while public officials such as the Defendants are subject to monetary damages under § 1983 in their individual capacities, in order for either of them to be liable, Plaintiff must have evidence to show that the named Defendant actually engaged in conduct which denied Plaintiff his constitutional rights. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["Liability . . . must be based on the personal involvement of the Defendant"], cert denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Ill. 1996); see also Horton v. Marovich, 925 F.Supp. 540 (N.D.Ill. 1996) ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal rights"].

Here, it is readily apparent that the Defendant Blanton (Sheriff of Cherokee County) has been included as a Defendant in this action solely by virtue of his supervisory position. Other than the exhibit Plaintiff has presented (investigation report of Detective Jimmy Henson) indicating that Blanton was at the scene of the courthouse fire when Detective Henson arrived on the scene, Plaintiff has provided no evidence of any involvement by Blanton in any of the allegedly improper activities set forth in his Complaint. Just because the original warrants against Plaintiff were sought by the Sheriff's Office (which both the Defendants' *and* Plaintiff's exhibits show was done by the Defendant Clark) does not evidence any personal involvement by Blanton in the conduct alleged, nor has Plaintiff provided any evidence whatsoever to support his general and conclusory statement in his Complaint that Blanton made defamatory statements about him to the news media. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.



1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]

The doctrines of vicarious liability and respondeat superior are not applicable in § 1983 cases. See Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). Therefore, as Plaintiff has presented no evidence of any personal involvement by the Defendant Blanton in the conduct and actions alleged in the Complaint, as a supervisory official Blanton may only be found liable if he was responsible for an official policy or custom which resulted in illegal action being taken against the Plaintiff. See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)), abrogated on other grounds, County of Riverside, 500 U.S. 44 (1991). Plaintiff has presented no evidence of any such policy or custom here. Rather, Plaintiff's complaint concerns the way Clark investigated the case and decided to bring charges (of which there is no evidence of involvement or participation by Blanton).

Hence, even if the Court were to otherwise find that the claims made against Clark are sufficient to survive summary judgment, Blanton is entitled to dismissal as a party Defendant. Vinnedge, 550 F.2d at 927-929 [the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 case].



**II.**

With respect to the merits of Plaintiff's claim as asserted against the remaining Defendant Clark,[4] the Defendants argue that it is subject to dismissal because it is barred by the applicable statute of limitations.

Defendants correctly note that the applicable statute of limitations for § 1983 claims filed in the District of South Carolina is three (3) years. See Wilson v. Garcia, 471 U.S. 261, 265-280 (1985) [In § 1983 actions, federal courts should apply a State's general statute of limitations for personal injuries]; see also S.C.Code Ann. § 15-3-530(5) [Establishing a three year statute of limitations for personal injury actions]. With respect to Plaintiff's false arrest/imprisonment claim, this three (3) limitations period began to run when Plaintiff was detained pursuant to legal process. Wallace v. Kato, 549 U.S. 384, 389 (2007). Considered in the light most favorable to the Plaintiff, the evidence is that Plaintiff was turned over to the Cherokee County Sheriff's Department and jailed on August 1, 2005, where he remained until he was "finally served [with the] arrest warrants 12 days later". See, Plaintiff's Complaint, ¶ ¶ 10-12. The arrest warrants themselves show that they were issued on October 15, 2004, and served on the Plaintiff on August 12, 2005. See Exhibits (arrest warrant signed by Judge Crocker). [Court Docket No. 34-4]. Therefore, even assuming Plaintiff could maintain a false arrest/imprisonment claim up until the time he was served with the arrest

---

[4]While Plaintiff also lists "John and Jane Doe" as being Defendants in the caption of his Complaint, no allegations against any such unknown Defendants are set forth in the narrative of Plaintiff's Complaint, nor have these individuals ever been identified. As nine months have now passed since the filing of this case, these unidentified Defendants should be dismissed without prejudice from the caption of the Complaint. Cf. Davison v. Kennedy, No. 15-1373, 2016 WL 538906, at * 7 (M.D.Pa. Feb. 11, 2016) [Dismissing John Doe defendants whom Plaintiff had failed to identify and serve within one hundred twenty days]; see also Order filed November 23, 2015 in 3:15-MC-376-TLW. .



warrants (even though they had already been issued before that time), the statute of limitations for Plaintiff's false arrest/imprisonment claim began to run on April 12, 2005. See Singer v Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995) (quoting Prosser and Keeton on Law of Torts § 119, pp. 885-886 (5th ed. 1984)["If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself"]. Once Plaintiff was detained pursuant to legal process, his claim for false arrest/imprisonment ceased, and if pursued after that point, it has to be pursued as a malicious prosecution claim.  Singer, 63 F.3d at 117; see also Wallace, 549 U.S. at 389 ["Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a Magistrate or arraigned on charges . . .  Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."] (internal citations omitted); Jones v. City of Columbia, 389 S.E.2d 662, 663 (S.C. 1990)["An action for false imprisonment cannot be maintained where one is arrested by lawful authority"].

In their motion for summary judgment, Defendants even give Plaintiff the benefit of time until April 12, 2006, when he began serving a sentence on a separate conviction, as the date when the statute of limitations began to run on this claim.  However, even assuming that date *would* be the proper date for the statute of limitations to have begun to run on this claim (which the



undersigned does not find), Plaintiff did not file this action until June 8, 2015,[5] well after the three year statute of limitations for filing a false arrest/imprisonment cause of action had expired. Therefore, Plaintiff's false arrest/imprisonment claim is barred by the statute of limitations.

**III.**

To the extent Plaintiff's claim extends past his detention pursuant to legal process and becomes one for malicious prosecution, and further assuming for purposes of summary judgment that such a claim would not be barred by Heck v. Humphrey, 512 U.S. 477 (1994),[6] this claim could

---

[5] Filing date pursuant to Houston v. Lack, 487 U.S. 266 (1988) [Filing date is the date prisoner delivers pleadings to prison mail room]; see Lewis v. Richmond City Police Dep't, 947 F.2d 733, 734-735 (4th Cir. 1991) [Extending Houston v. Lack to § 1983 claims].

[6] In Heck v. Humphrey, the Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, a Plaintiff must first prove that their conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. Even where criminal charges are nolle prossed, (which the evidence presented shows is what happened to the charges at issue here) and therefore no conviction is obtained, Heck still bars a claim for damages unless the Plaintiff can establish that the nolle prosequi or dismissal of the criminal charge was entered for reasons consistent with his innocence. Cf. Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997), cert. denied, 118 S.Ct. 1515 (1998). Plaintiff has the burden of showing that dismissal of charges against him meets this standard. cf. Washington, 127 F.3d at 557 ["The plaintiff has the burden of proving a favorable termination. The plaintiff meets his burden of proof only when he establishes the nolle prosequi was entered for reasons consistent with his innocence. The circumstances surrounding the cessation of the criminal proceedings must compel an inference that reasonable grounds to pursue the criminal prosecution were lacking."] (citation omitted); Roesch v. Otarola, 980 F.2d 850, 853-854 (2d Cir. 1992) [holding that requirement that plaintiff receive favorable termination applies equally to claims of false arrest, false imprisonment and malicious prosecution]; Lambert v. Williams, 223 F.3d 257, 260-261 (4th Cir. 2000) [claim for malicious prosecution requires a showing that the initiation or maintenance of a proceeding against the plaintiff was without probable cause to support it and a termination thereof occurred in favor of the plaintiff], cert. denied, 531 U.S. 1130 (2001). Plaintiff states in his verified complaint that he was advised that the charges against him had been dismissed by the South Carolina Attorney General's Office, and that the Defendants knew there was "no evidence" showing that
(continued...)



not have been brought prior to the termination of Plaintiff's criminal proceedings. Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995)[For claims based on malicious prosecution, the limitations period starts to run only when the underlying criminal activity is conclusively terminated]; Petitio v. Hill, No. 04-4493, 2007 WL 1016890 at * 12 (E.D.N.Y. Mar. 26, 2007) [same]. Therefore, the statute of limitations would not have started to run on Plaintiff's malicious prosecution claim until April 3, 2012, the date his indictments were nolle prossed. Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996) [Claim for malicious prosecution does "not accrue until a favorable termination is obtained."]. Consequently, Plaintiff had until April 3, 2015 to file this lawsuit.[7]

As previously noted, Plaintiff did not file this lawsuit until June 8, 2015. Therefore, Plaintiff's malicious prosecution claim is also barred by the applicable statute of limitations.

**IV.**

Finally, liberally construing Plaintiff's Complaint, he appears to also be asserting a state law claim for slander and defamation against the Defendants. The Defendants do not address this issue in their motion; however, to the extent Plaintiff has alleged claims under state law, federal

---

[6](...continued)
Plaintiff had ever burglarized or set fire to the Cherokee County Courthouse. Complaint, ¶¶ 19-20. For his part, Clark does not address in his affidavit why these charges were nolle prossed, with the only notations on the indictment themselves showing that they were nolle prossed by the Assistant Deputy Attorney General on April 3, 2012. See Defendants' Exhibits (State Court indictments). Therefore, considered in the light most favorable to the Plaintiff, the undersigned has assumed (for purposes of summary judgment only) that these indictments were nolle prossed for reasons consistent with Plaintiff's innocence.

[7]Plaintiff asserts in his memorandum that his attorney did not advise him until 2013 that his charges had been nolle prosed. At that time, Plaintiff still had over a year to timely file his action. Therefore, assuming this claim to be current, Plaintiff has still not shown that he exercised due diligence in pursuing and preserving his claim, and would not be entitled to any type of equitable tolling. Wimbush v. Jenkins, No. 13-4654, 2014 WL 1607354 at * 9 (D.N.J. Apr. 22, 2014).



courts are allowed to hear and decide state-law claims only in conjunction with federal-law claims, through the exercise of "supplemental jurisdiction." See 28 U.S.C. §1367; <u>Wisconsin Dep't of Corrs. v. Schacht</u>, 524 U.S. 381, 387 (1998). Since, for the reasons already set forth, supra, Plaintiff has asserted no valid federal claims, this Court cannot exercise "supplemental" jurisdiction over Plaintiff's state law claims, if any. See <u>Lovern v. Edwards</u>, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants"].

Alterantively, a civil action for a state law claim could be cognizable in this Court on its own, under the federal diversity statute. However, that statute requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00). See 28 U.S.C. § 1332(a). Complete diversity of parties in a case means that no party on one side may be a citizen of the same State as any party on the other side. See <u>Owen Equipment & Erection Co. v. Kroger</u>, 437 U.S. 365, 372-374 (1978). Here, all parties to this action appear to be residents of South Carolina, so diversity of citizenship does not exist. See <u>Complaint</u>, at Section III.

Accordingly, to the extent Plaintiff has asserted a state law claim, it is subject to dismissal.

### Conclusion

Based on the foregoing, it is recommended that Defendants' motion for summary judgment be **granted** with respect to Plaintiff's false arrest/imprisonment/malicious prosecution claims asserted under 42 U.S.C. § 1983, and that those claims be **dismissed**. It is further recommended that, to the extent Plaintiff has intended to assert any state law causes of action in this law suit, that those claims be **dismissed**, without prejudice.

- 15 -



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 6, 2016
Charleston, South Carolina



- 16 -

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

